The People, ex rel. The Mayor, Aldermen and Commonalty of the City of New York, Appellants, *v.* Dennis McCarthy et al., Composing the State Board of Equalization, Respondents.

An order of General Term quashing a writ of *certiorari*, issued to review the proceedings of the State board of equalization, is in the discretion of

the court (Code of Civ. Pro., § 2127), and is not reviewable here, except in a case where the General Term refrains from exercising its discretion, and grants the order upon the ground of want of power to issue the writ.

*It seems* the price paid on private sale of real estate is not competent evidence of value, and a comparison of the difference between the consideration stated in transfers of real estate and the assessed valuation of such real estate in two counties of the State is not conclusive or cogent evidence to show that the assessed valuation in the one county is nearer the real value than in the other.

The statutory scheme of valuation for purposes of taxation stated and explained.

The fact that the State board of equalization, after giving a county full opportunity to present proof, information and argument, went into secret session when deliberating upon the equalization of assessments, excluding the representatives of the county from participation therein, and declined their assistance and advice in making such equalization, does not justify a charge of misconduct against the board.

Nor is it just ground for such a charge against the State assessors, that, in seeking information as to the value of real estate in the county, they did not accept offers of assistance and advice tendered by the county tax and assessment officers.

(Argued June 23, 1886; decided July 27, 1886.)

APPEAL from order of the General Term of the Supreme Court, in the third judicial department made February 5, 1886, the nature of which and the material facts are stated in the opinion.

*Burton N. Harrison* for appellant.    *Certiorari* was the proper remedy.    (*Mayor, etc., v. Davenport*, 92 N. Y. 611, 613; *Bellinger* v. *Gray*, 51 id. 610; Code of Civ. Pro., §§ 2140, 2141; *Lawton* v. *Com'rs of Highways*, 2 Cai. 182; *State* v. *Middlesex*, 39 N. Y. 516; *People, ex rel.* v. *Bd. Fire Com'rs*, 100 id. 85.)    The order quashing the *certiorari* is appealable to this court; and this court should now entertain the appeal and review the case.    (*People* v. *Stillwell*, 19 N. Y. 532; *People, ex rel.* v. *Bd. Assessors*, 39 id. 81, 89; *People, ex rel.* v. *Ferris*, 36 id. 219; Code of Civ. Pro., § 2141; *People, ex rel.* v. *Bd. Fire Com'rs*, 100 N. Y. 85.)    If the board, having the certified returns before it, made a determination different from that which should necessarily have been

made, if those returns only were considered, without any evidence whatever before them to sustain the determination actually made, it erred. (Code of Civ. Pro., § 2140.) On such a proceeding the court need not necessarily reduce the aggregate valuation; it could even increase in a proper case, if the facts warrant; or the court itself can equalize. (Code, § 2137; *Ky. R. R. Tax Cases*, 115 U. S. 31; Laws of 1874, chap. 351; Laws of 1879, § 9, chap. 312; Code of Civ. Pro., § 2141; *People, ex rel. Kent*, v. *Commissioners*, 100 N. Y. 82.) The *certiorari* must be heard upon the writ and return, and the papers upon which the writ was granted. (Code of Civ. Pro., § 2138.) The State of New York, with reference to general State taxes, deals not with individuals, but with counties as representing areas of taxation. (92 N. Y. 614–17.) To have addressed the writ to the comptroller, otherwise than it is addressed, would have made it bad, as being multifarious. (*People* v. *Walter*, 68 N. Y. 409.) The action of the board and that of the comptroller are separate, not joint; if both are to be reviewed, they should be reviewed separately, not together; but if a further proceeding against the comptroller be necessary, it may be instituted against him separately. (*People* v. *Mayor, etc.*, 19 Hun, 441, 458; *People, ex rel.* v. *Supervisors*, 51 N. Y. 446.) The statute intended that, after examining the values certified and returned to the comptroller by the several counties, the board of equalization should have no jurisdiction to "revise" them by any changes whatever except upon knowledge or information of facts which required such changes in order to effect the just relation between the several counties which is to be accomplished by "equalizing" their valuations of real estate and on such a *certiorari* as this, such knowledge or information shall be set forth in the return itself — it is jurisdictional, and cannot be supplied by intendment. (*People, ex rel.* v. *Soper*, 7 N. Y. 432; *People, ex rel.* v. *Goodwin*, 5 id. 572; *People, ex rel.* v. *Smith*, 45 id. 481–2; *People, ex rel.* v. *Hurlburt*, 46 id. 113; *People, ex rel.* v. *Knowles*, 47 id. 419–20; *People, ex rel.* v. *Smith*, 45 id. 776–7.) On the return and the uncontradicted allegations

of the petition, the board of equalization in 1885 had no jurisdiction to add any thing to the valuations returned to the comptroller from the county of New York. (24 Hun, 112 ; 38 id. 46.)

*D. O' Brien*, attorney-general, and *D. Magone*, for respondents. An appeal is not allowable from a decision of the Supreme Court, quashing a writ of *certiorari*. (*People v. Suprs. of Greene*, 82 N. Y. 275 ; *People, ex rel. Marsh*, v. *Delaney*, 49 id. 655 ; *People v. Suprs. of Allegany*, 15 Wend. 206 ; *People v. Stilwell*, 19 N. Y. 533 ; *People, ex rel. Haneman*, v. *B'd T. Com'rs, etc.*, 85 id. 655 ; *Jones v. People*, 79 id. 51 ; *People, ex rel. Purvis*, v. *B. and P. Comm. N. Y.*, 86 id. 639 ; *Bate v. McDonald*, 97 id. 646 ; *People v. Thompson*, 99 id. 641 ; *Woerishoffer v. R. R. Co.*, id. 398 ; *In re Holbrook*, id. 542 ; *People, ex rel. Murphy*, v. *French*, 92 id. 310.) The State board of equalization had jurisdiction of the subject-matter and persons of the relators, as shown by their own papers. (*Mayor, etc.*, v. *Davenport*, 92 N. Y. 611.) Having jurisdiction of the person and subject-matter confessedly, and as appears, also, from the relator's own papers, having performed correctly all its ministerial functions, its judgment as to valuations can be annulled only by an abuse of its judicial powers. (*Mayor, etc.*, v. *Davenport*, 92 N. Y. 612 ; Code, § 2140 ; *Beckwith v. N. Y. C. R. R. Co.*, 64 Barb. 299 ; *Morss v. Sherill*, 63 id. 21 ; *People v. B'd Fire Com'rs*, 82 N. Y. 361.) The so-called "proof and papers" which the relators claim to have exhibited to the State board of equalization were not properly before it. (Laws of 1859, § 8, p. 704 ; *Mayor, etc.*, v. *Davenport*, 92 N. Y. 612.) The State board of equalization were authorized and required to hear the proofs of the relators, they had the right to reject the testimony offered, and that rejection is not reviewable on *certiorari*. (*People v. Hair*, 29 Hun, 125 ; *People v. State B'd Assessors*, 22 Week. Dig. 453.) The action of the Special Term in granting the writ and stay was improvident, for the reason that it stayed the imposition and collection of a tax necessary for State

purpose. (Laws 1859, § 8, p. 704; *King* v. *King*, 2 T. R. 234; *People* v. *Suprs. Allegany Co.*, 15 Wend. 198, 210; *Lawton* v. *Comm. of Cambridge*, 2 Caines, 182; *In re Mt. Morris Square*, 2 Hill, 28; *People* v. *Com. Council of Utica*, 65 Barb. 9, 22; *People* v. *Stilwell*, 19 N. Y. 531–2; *Kilburn* v. *St. John*, 59 id. 26; *People* v. *B'd of Aldermen*, 10 Abb. N. C. 34; *West. R. R. Co.* v. *Nolan*, 48 N. Y. 518; *People* v. *Assessors of Albany Co.*, 2 Hun, 583, 591; *Susquehanna B'k* v. *Sup. Broome Co.*, 25 N. Y. 312, 315; *Sheridan* v. *Andrews*, 52 id. 450; 92 id. 613.) The writ of *certiorari* at bar directed to the State board of equalization came too late to review the alleged grievances of the relators. The board had lost jurisdiction entirely of the matter when they "deposited their certified statement of the amount of assessment for each county," in the comptroller's office. (*People* v. *Comm.*, 9 Hun, 609; *People* v. *Assessors*, 82 N. Y. 275; *People* v. *Comm.*, 43 Barb. 494; *People* v. *Walter*, 68 N. Y. 263; *People* v. *B'd Suprs.*, 34 Hun, 266.) It does not help the relator's case at all that other counties in the State are valued too low. (*People, ex rel. Suprs.*, v. *Hadley*, 1 Abb. N. C. 441; 92 N. Y. 608.) The *certiorari* was not directed to the proper parties to bring back the State board's certificate for review. (Code, § 2129.) As the return of the respondents negatived every material allegation of the petition of the relators, the decision of the Supreme Court in favor of the respondents was right and should be affirmed. (*People, ex rel. Sims*, v. *Fire Comrs.*, 73 N. Y. 473; *People, ex rel. McCarthy*, v. *French*, 25 Hun, 111.) A party assailing an assessment as excessive must make it appear conclusively that the method by which the assessors arrived at the result complained of was incorrect, and that the assessment does not represent the fair value of the property assessed. (*People, ex rel. West. F. Ins. Co.*, v. *Davenport*, 91 N. Y. 574.) The relator, as a corporate body, cannot have a standing in court to vindicate the individual rights of the tax payers of the city and county of New York. They have no interest as such in maintaining this proceeding. (*Town of Guilford* v. *B'd of Suprs.*, 18 Barb. 635; affirmed, 13 N. Y. 147.)

Ruger, Ch. J. This is an appeal by the relator, from an order of the General Term of the Supreme Court, for alleged error in quashing a writ of *certiorari* issued to the State board of equalization, to obtain a review of its proceedings in equalizing appraisements of property in the State between the several counties for purposes of taxation, during the year 1885. The writ was applied for under the provisions of the Code of Civil Procedure, which, by express provision, makes its allowance discretionary with the court. (§ 2127.) Such an order is not reviewable by this court. If the court in making the order had refrained from exercising its discretion in passing upon the question presented, and had quashed the writ, upon the ground of a want of power to issue it, or had granted it in a case not authorized by law, this court could properly have reviewed the questions, presented by an appeal from such determination. (*People, ex rel. Second Ave. R. Co.*, v. *Board of Com'rs of New York*, 97 N. Y. 37, 42.) But in a case where that court has exercised its discretion with respect to the allowance or denial of the writ, and has refused to grant it on the ground that it ought not under all the circumstances of the case to have been issued, this court has no jurisdiction to review its determination, and so it has been repeatedly held. (*People, ex rel. Haneman*, v. *Board of Tax Com'rs of New York*, 85 N. Y. 655 ; *People., ex rel. Vanderbilt*, v. *Stilwell*, 19 id. 531 ; *People, ex rel. Davis*, v. *Hill*, 53 id. 547.) In the opinion referred to in the order, for the grounds of the decision of the court below, that court alleged no want of power to authorize the writ, but stated many, and, as we think, sufficient reasons why, upon all of the facts of the case, the writ ought not to have been issued. It follows from these views that the appeal should be dismissed.

We might well rest our decision altogether upon this ground and refrain from any further expression of opinion, upon the questions presented, but since the appellants contend that this appeal is taken by the supposed invitation of this court, conveyed in its opinion in *Mayor, etc.*, v. *Davenport* (92 N. Y. 604, 611), and considering the gravity and importance of the ques-

tions involved, and the zeal and earnestness with which they have been presented by the appellant, we have thought it not inappropriate to comment briefly upon some of the grounds of complaint stated in the relator's petition.

If it be true, as alleged therein, that systematic injustice has been done to the city of New York in the equalization of assessments among the several counties of the State by the State board of equalization, and that such result has been produced " collusively, unlawfully and by a sinister and selfish combination and conspiracy of the members of said board against the petitioners and tax payers of the city and county of New York, to benefit themselves severally and their several friends and neighbors," etc., at the expense of the tax payers of New York, then a great public crime has been committed, and a wrong done which calls upon the proper authorities, for prompt investigation and redress. Such a charge should not have been lightly or inconsiderately made, and if made at all, should at least have been sustained by plausible proof, to shield its authors from deserved censure in making it.

A careful examination of the facts stated in the relator's petition and of the proof submitted therewith, has led us to the conclusion that there was no adequate foundation for the charges, and that they have been based wholly upon a misconception, of the force of the evidence adduced in their support, and of differences of opinion between it, and the State board, as to the proper method to be pursued, in investigating and determining questions of estimate and valuation by that body.

The principal ground upon which the charge is predicated, is the claim that the assessed valuation of real estate in New York, approximates more closely its real value, than obtains in the other counties of the State, and that, therefore, a proper equalization would reduce the valuation of property in that city, instead of increasing it. This claim is attempted to be supported, by comparing the consideration, inserted in the deeds of certain selected transfers of real estate, in the several counties of the State, with the assessed valuations of the same property and the assumption that the average amount of such prices

and valuations as thus compared, conclusively established the ratio of assessment to value prevailing in such counties. We do not think that this assumption, even if it were based upon a comparison of all of the transfers in a particular locality, or even of such as could be conclusively shown to have been fairly made, can be maintained. In the county of New York the instances of such sales, reported in the relator's petition are quite numerous, and cover a period of time extending over nearly twenty years, although the assessed valuations with which they are compared, are confined to the year 1884. These instances of sales were selected, from an almost inexhaustible number by the agents of the relators, and show great disparity in the proportions existing between their several assessed valuations, and the prices inserted as the consideration in their respective deeds. A large number of instances appear where the assessed valuations are much larger than the prices apparently obtained for the land, reaching occasionally three and four times the amount specified in the deeds; and on the other hand still greater disparity is shown between the prices obtained in many cases, and the assessed valuations, in some instances amounting to six times the amount of the assessment. It is thus quite apparent that a partial or even careless process of selection, would seriously affect the weight of such statements, as evidence, and render them particularly objectionable, when made by a party interested in producing a particular result. The duty of making the selections in the city of New York was wholly intrusted to an individual describing himself " as an attorney and counselor at law," and his specialty as that " of the examination of titles to real estate." His mode of procedure in making the table of prices was to omit therefrom " such cases as showed a nominal consideration only, and indefinite and clearly inconsistent statements of consideration and assessments, and cases where the assessment was made of property 'buildings in progress.'" Such a rule of selection, guided by no knowledge of the facts, and influenced by vague and indefinite inferences, evidently affords the widest scope for the pro-

duction of any result it might be desired to reach. The selections in the several counties of the State outside of New York were also made by agents of the relators, residing in such counties, and although made in apparent good faith, and fortified generally by the affidavits of the persons making them, as to their belief in the impartiality of the reports, they could not be accepted as conclusive, or even cogent evidence, of the facts stated, by an impartial tribunal. The assumption founded upon such evidence is, we think, altogether erroneous, and cannot be supported upon any known principle of law, or justice, in the appraisement of property for purposes of taxation. It certainly is directly in conflict with the scheme of appraisement provided by the statutes of the State, and we believe with settled rules of valuation.

There would seem to be no reasonable objection to the reception and consideration by the State board, of the information furnished to them by the relator, to be accorded such weight and influence, as they might deem it entitled to, and we have no reason to suppose that this consideration was not given to it; but we think the relator has ascribed to the information ffered, an importance altogether disproportionate to its real value, when it claims that it shall be regarded, as decisive evidence upon questions of value.

The sums inserted in the deeds referred to, were not authenticated in such a manner as to make them evidence of the actual consideration, even if the price paid on sales of real estate between individuals, should be deemed admissible at all as evidence of value. We think it quite clear, however, that such price is not in any view competent evidence of value. (Bouvier's Ins. 1224.) No rule of law requires the true consideration paid upon a transfer of land to be inserted in conveyances of real estate, and it is within the common knowledge of all conveyancers that the amount stated therein, is often determined by fanciful, capricious and arbitrary considerations, which render it utterly unreliable as evidence of value. It is frequently depressed by forced and unnatural sales, and as often enhanced, by fictitious values placed upon property trans-

ferred, in exchange or deeded in settlement of disputed claims, or given from consideration of affection, liberality and duty, and is at the best but the opinions of the grantors and grantees of its value, or a declaration of the value placed by them upon the property. Such prices have usually been held inadmissible as evidence of value in actions relating to property, for the reason that they are liable to be influenced by too many causes, aside from the actual value, to be regarded as competent evidence of that fact. (*Roe* v. *Hanson*, 5 Lans. 305.) Prices obtained upon public sales are, for obvious reasons, considered some proof of the value of the property sold, and are receivable as evidence upon the question of value. (*Campbell* v. *Woodworth*, 20 N. Y. 499.) The usual method, however, of proving value in legal proceedings, is by the testimony of witnesses, expressing their opinions under oath as to such value, based upon their knowledge of the subject-matter, and familiarity with the circumstances bearing upon the question. (*Clark* v. *Baird*, 9 N. Y. 183; Greenl. Ev., § 440, n.; Whart. Ev., §§ 447, 448, 449; Lawson's Expert Ev. 435; *De Witt* v. *Barly*, 17 N. Y. 340.) Indeed the relator's petition seems to nullify its own claim, and carry its own refutation.

When applied to by the State assessors for an inspection of the records of transfers of real estate, kept by them in New York, with a view of informing their judgments, from that source of information, the officers of its department of taxes and assessments gave irrefutable reasons, why such records should not be resorted to, as evidence of the value of its real estate. They said that such record "of itself alone, taken as a whole and without discrimination or clear scrutiny into the facts of each particular case, is not a safe guide in ascertaining the relation of assessed valuations to the values intended by the statute to be considered by the assessors," etc., and "that in the city of New York, transfers of real estate are rarely made, except by the intervention of brokers who are paid by commissions or percentages upon real or assumed amounts at which the sales are made, and that of late years many of the transactions are not for cash, but are by exchange of the lands trans-

640    PEOPLE, ex rel. MAYOR, ETC., *v.* McCARTHY et al. [June,

Opinion of the Court, per RUGER, Ch. J.

ferred for other lands situated whether in the city of New York or the country, and that in such cases the alleged selling prices recited in the instruments of transfer are frequently, if not always, misleading." After such a confession by the relator of the unreliability of such evidence, it seems quite unnecessary to prolong the discussion, and with a few suggestions as to the general character of our statutory scheme of valuation which seems to be wholly misconceived by the relators, we will omit further, consideration of the subject.

While every opportunity is afforded by the laws of the State, to parties interested in such questions, to present their claims and complaints, by petition or otherwise, to the various tribunals, engaged in perfecting the valuations of property, no method is provided, by which contending parties with conflicting interests, can appear before these bodies and have their respective rights and interests, heard and determined, according to common-law rules of evidence and practice. Special provision is made by chapter 269 of the Laws of 1880, to review, by *certiorari*, any assessment made in any town, ward, village or city of the State, which is claimed to be illegal, erroneous or unequal, and upon the trial of such *certiorari* by the court to receive evidence, and consider the same in the determination of the questions involved. So, also, it is provided that appeals may be taken from the determination of boards of supervisors in equalizing assessments among the towns of the respective counties to the State assessors, before whom a trial shall be had, and evidence taken upon the issues made by such appeal. (Chap. 312, Laws of 1859; chap. 49, Laws of 1876.) chaps. 80 and 269, Laws of 1880. A determination made by either of these tribunals, in such proceedings, may properly be reviewed by the court upon *certiorari*, as the evidence upon which it is based becomes a part of the record, and is subject to legal rules and exceptions.

Aside from these special cases, the theory of the statute leaves all questions of value to be determined by the instructed judgments of the several officers appointed to make assessment, and gives them abundant opportunity to inform themselves of

all necessary facts, by any means which their sense of duty dictates, to qualify them for the performance of their duty. Each town, city and ward is provided with local officers, whose duty it is to make diligent inquiry as to the taxable property situated within their several jurisdictions, and hear and determine the complaints of its owners, and appraise its value, according to their judgment. The same rule of valuation obtains throughout the entire State, and various officers, supposed to be qualified for the performance of their duty by knowledge, integrity, experience and judgment, founded upon personal examination and inspection, are selected to investigate and value the taxable property in their respective localities, according to the statutory rule of actual values. (§§ 8, 9, 17, 20, art. 2, tit. 2, chap. 13, part 1, R. S.) These valuations, when made, are returned to the respective boards of supervisors of the several counties, whose duty it is to review them, and if, for any reason, such valuations appear to them to be to be unequal or unbalanced, as between the several towns of the counties, to correct such inequalities and equalize such valuations, so that those of each town shall bear a fair and just relation, to those of other towns in the same county. To guard against injustice arising from inequalities in value, among the counties, the State board of equalization, composed of the heads of the principal executive and legislative departments of the State Government, associated with the three State assessors, is provided, whose duty it is to review the assessments, returned from the several counties, and so correct them, if necessary, as to make the assessed valuation of real property in each county, equal in proportion, and to bear the same relation to its actual value, as that which obtains in other counties. (Chap. 312, Laws of 1859.) To aid in this important and responsible duty, it is provided that the State assessors shall visit each county in the State at least once in two years, and make personal inspection of the real property of such counties, and, by diligent inquiry through the examination of witnesses, or such other method as commends itself to their judgment, to acquire information of facts and circumstances bearing upon the questions of value and appraisement, not only with a view of their own instruction,

642    PEOPLE, ex rel. MAYOR, ETC., *v.* MCCARTHY et al. [June,

Opinion of the Court, per RUGER, Ch. J.

but also to prepare and present a digest in writing, of such information as they deem important to the State board of equalization, for their instruction and guidance, in the performance of the duties intrusted to them. The duty of making such digest, however, is not compulsory upon the assessors, but is, by the statute, left discretionary with them to perform or not, according to their view of its necessity. They are to digest only such facts as they deem important, and, if they omit to make such digest, we must assume that they did not consider it necessary to do so.

It is not claimed that the State assessors have neglected to perform the duty imposed upon them, in visiting the various counties of the State, and making diligent inquiry as to the value of real estate therein, and the ratio of assessment to value prevailing in the several counties. Although the information thus obtained might not have been digested in writing, it was still available to inform their own judgments, and to be made the subject of oral communication to, and discussion by, the board of equalization, when acting upon the questions to be adjudicated.

The law assumes that the several officers charged with the duty of determining the values of property, for the purposes of taxation, in the State are either competent, from their own knowledge and experience, to properly discharge such duty, or that they will, by voluntary action, fit themselves for its due and proper performance. No special education is required to enable a witness to testify as to the value of real estate. It does not involve any question of science or skill, and no reason exists why any person of ordinary intelligence and judgment, cannot qualify himself to estimate with reasonable accuracy, the value of such property, by making special inquiry and examination respecting it, wherever it may be situated. (Lawson's Expert Ev. 436; *Swan* v. *County of Middlesex*, 101 Mass. 173.)

The valuation of property is necessarily a matter of opinion among men, and must, under all circumstances, be finally determined by the judgment of individuals, and the scheme of

1886.] People, ex rel. Mayor, etc., *v.* McCarthy et al.    643

Opinion of the Court, per Ruger, Ch. J.

the statute seems to be, to leave its decision to the officers selected for that purpose, and to make their determination conclusive evidence of such value, for the purposes of taxation. The law does not specify the degree of knowledge or information which the members of the State board shall possess, to entitle them to discharge their duty, and the only statutory condition to the exercise of their authority, seems to be the possession by them, of the assessment-rolls, returned by the several counties of the State.

Except for the provision of the statute authorizing parties whose property is assessed, to appear before the town, ward or city assessors, and make affidavit as to the circumstances and value of property assessed to them respectively,— no provision is made for the hearing of such parties, by any of the administrative bodies engaged in perfecting the valuation of taxable property, and it is to be implied by irresistible inference, therefore, that the law contemplates that such bodies shall proceed in the performance of their duties, upon their own knowledge, information and judgment, and so far as they may be deficient therein that they will, in their own way, inform themselves of such facts, as it may be necessary to know, in order to discharge their duties intelligently.   While there is no want of power in the courts to review such determinations by *certiorari*, yet a judicial review of conclusions based mainly, if not exclusively, upon the mental operations, and the individual knowledge and qualifications, of the persons composing the tribunals, referred to, is obviously impracticable if not impossible.   Reasons founded upon the personal knowledge and experience of individuals, or conclusions reached by the exercise of their intellectual faculties, cannot be recorded and reproduced, in such a manner as to enable an appellate tribunal intelligently and fairly to review, the correctness of their judgment.   Inherent and insuperable difficulties exist, in the very nature of the process by which conclusions are reached, which renders any appellate jurisdiction over their determination, impracticable and ineffectual.   There must, from necessity, reside somewhere, the power of making a final disposition of questions of value for

the purposes of taxation, and the State has made the judgment of the members of its board of equalization, the ultimate determination of such value ; and a court has not the power to substitute its own opinion, for that of the tribunal, specially authorized by law to form and declare one.

Certain instances of alleged misconduct on the part of the State assessors, and of the members of the State board of equalization, are recited in the petition which call only for passing remark.   Among the most prominent of these are the allegations that the State board went into secret session, as it is called, when deliberating upon the equalization of assessments, and excluded the relators from participation therein, and that such board declined the assistance and advice of the relators in making such equalization, and rejected their offer to make out and furnish a table of equalization for such board.

It is not claimed that the relators had any want of opportunity to present such proof, information and argument, as they desired while the board continued in open session, and before it retired for deliberation and judgment.

It is further complained that the State assessors in seeking information as to the value of real estate in New York, did not accept the offer of assistance and advice, tendered by the officers of the relator's department, of taxes and assessment to the extent that they were willing to contribute it, and instead thereof, prosecuted their inquiries independently and sought such sources of information as were approved by their own judgments, instead of those of the relator's assessment officers. It is conceded in the petition that this was done after the officers of the department of taxes and assessments had objected to furnish the assessors with the record of transfers kept in their department as hereinbefore stated, and after they had also objected to the consideration by the State assessors of the difference, between the assessed valuation and the real value of such well-known properties as the Astor House, and the Fifth Avenue Hotel, in determining the ratio of assessment in New York.  The petition then proceeds to state that the said " State assessors remarked that they should talk on the subject with

1886.] People, ex rel. Mayor, etc., *v.* McCarthy et al. 645

Opinion of the Court, per Ruger, Ch. J.

one or more or all of several individuals then named by them, but who are *not officers or employes of your petitioners.*"

It is also alleged that in some of the counties in which members of the State board reside, the valuations were reduced, while in others it is admitted they were increased. It seems quite incredible that these facts should have been deliberately advanced by intelligent and candid parties, as the basis of charges of official misconduct and corruption against high officers of State acting in a judicial capacity, but we think the statement made presents a fair synopsis, of all of the facts and circumstances recited in the petition, as the foundation of the charges. The claim suggested that one, or all of the numerous parties interested should be allowed to be present, and to participate in the judicial deliberations of a tribunal, appointed by law to adjudicate upon disputed facts and inferences, and between interests so vast and conflicting, or that such party should be permitted to dictate or dispute in its deliberation, with it as to the grounds of its judgment, or the sources of its information, is quite too absurd to call for serious refutation or notice.

In conclusion it is proper for us to say that while upon the facts presented, we see no legal reason for supposing that injustice has been done to the relator by the equalization for the year 1885, yet such injustice may in fact exist, and it is incumbent upon the tribunal making such equalization in the future, by the presentation of facts bearing upon the question, or otherwise, to remove all serious doubts as to the equity and fairness of the judgments pronounced by it. It is doubtless impossible in questions depending so much upon mere opinion, and the discordant judgments of men, and involving such conflicting interests, that perfect uniformity of opinion, in any result that may be reached, can be secured; but the general sense of right and justice of the community at large may be safely relied upon to finally redress any wrong or injustice, which adequate proof shows to exist.

The appeal should be dismissed, with costs.

All concur; Rapallo and Earl, JJ., in result.

Appeal dismissed.