Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

*William G. Trotter*, for appellant.   *John C. Hunt*, for respondents.

MERWIN, J. The plaintiff upon this appeal seeks to review the ruling of the court, at the trial, that the complaint was defective. He, however, took no exception to such ruling. He applied for and obtained leave to amend; one of the conditions of the order being that, in case he did not amend and pay certain costs within a certain time, the complaint should be dismissed. In regard to such a case, it was held in *Weichsel* v. *Spear*, 47 N. Y. Super. Ct. 223, affirmed 90 N. Y. 651, that the party plaintiff, upon whose request leave to amend was granted upon payment of certain costs, otherwise complaint to be dismissed as not containing facts sufficient to constitute a cause of action, would not be heard to impugn the order as being irregular or erroneous.

There is nothing to show that the amount of costs imposed as condition to the amendment was unreasonable; and, upon failure to amend, the dismissal of the complaint would follow. The plaintiff had the benefit of the leave given. Whether further discussion upon the adjourned day should be allowed upon the sufficiency of the complaint was entirely a matter of discretion with the trial court, and the exception to the refusal of the court to grant the request of the plaintiff on that subject is not here available. The order of May 16, 1889, was in effect the final decision of the court, upon which the judgment is based. No exception to it was filed. It seems to me that the plaintiff is not in a position to have reviewed the ruling upon the sufficiency of the complaint. The action of the court thereon transpired at the trial. The plaintiff having asked and obtained leave to amend, and having had, to a certain extent, the benefit of the order, and not having excepted to the ruling, the only relief he was entitled to was to amend, and proceed with the action. It follows, the judgment and orders must be affirmed, with costs. All concur.

---

MITCHELL *et al. v.* METROPOLITAN EL. RY. CO. *et al.*

(*Supreme Court, General Term, First Department.* March 28, 1890.)

TRIAL—OBJECTIONS TO EVIDENCE—EQUITY ACTION.

In an equity action to recover damages caused by the maintenance of defendants' elevated railroad in front of plaintiff's premises, a judgment for plaintiff will not be reversed because of the admission of testimony as to the growth and improvement of the street in case the railroad had not been constructed where it was merely received by the trial judge "as one of the factors in the ascertainment of damages, reserving the question as to its application," and, in view of the small amount awarded, it is impossible to believe defendants could have been prejudiced.

Appeal from special term, New York county.

An equity action by Edward Mitchell and Hamilton L. Hoppin and Samuel H. Hoppin, as trustees for Louisa H. Hoppin, against the Metropolitan Elevated Railway Company and the Manhattan Railway Company, to restrain the operation of defendants' railroad in the street in front of plaintiff's premises unless defendants should pay such sum as might be found to be the value of the rights and easements taken by them. The injunction was granted unless defendants paid $12,000 within a certain time, and $2,476.19 damages and costs were awarded against defendants. Defendants appeal.

Argued before VAN BRUNT, P. J., and BARTLETT and BARRETT, JJ.

*Davies & Rapallo,* (*Samuel Blythe Rogers,* of counsel,) for appellants. *Mitchell & Mitchell,* for respondents.

BARRETT, J. The only point presented in this case by the appellants' brief is that the evidence fails to support the finding of the special term as to the value of the respondents' easements. We have consequently gone over the evidence with care, and the result is adverse to the appellants. There is, in truth, ample evidence of such value; indeed, evidence sufficient to sustain a much larger award than was actually made. The appellants do not, in fact, claim that there is an entire absence of evidence on this head. What they really attack is the supposed basis upon which that evidence rests. Mr. Mitchell testified to both fee and rental value upon the assumption that the appellants' railroad was not in front of his premises. He then put the depreciation at from one-quarter to one-third of such estimated value. The appellants treat the assumption as referring solely to the possibility of a speculative rise in South Fifth avenue property had the elevated railroad not been built. In estimating the present value of his premises upon the basis of a clear highway, Mr. Mitchell was dreaming, they contend, of realized hopes that this street would become a "second Broadway." A careful review of the testimony will show that neither the estimates of the witnesses nor the findings of the learned court were based upon any such hypothesis. Mr. Mitchell, it is true, said that the railroad had injured the street, had suspended its improvement, and practically paralyzed its development. He also spoke of the property owners' former expectations with regard to the character of the coming business, and the style of the coming houses. But it is entirely apparent that these expectations had no appreciable bearing upon his previous estimate of values. The testimony thus exclusively dwelt upon by the appellants was elicited at the close of the cross-examination by the following question: "You said that the building would be worth $40,000 or $45,000 without the road. That, I take it, requires some imaginary picture of what the situation would be, in your mind, in order to enable you to give such an estimate. *What would you imagine would be the condition of affairs there if this road had not been built?* What kind of occupancy of the street is this estimate based upon?" Mr. Mitchell's answer covers as much ground as the question. He treats the latter in the disjunctive, and answers what we have italicized by a somewhat discursive account of the rise and fall of the street, and by a variety of facts showing its upward and advancing tendencies prior to the construction of the road. But the value of the invaded easement is not materially affected by these considerations. Such considerations have a place apart by themselves, for he declares in his redirect examination that if the expections to which he has just testified had been fully realized a lot 25 feet by 75 on the westerly side of the avenue would have been worth very nearly $50,000 without any building at all. It is plain, therefore, that when he testified that "everything taken together makes up the depreciation which I mentioned, that is, one-quarter to one-third of $40,000 or $45,000," he did not include speculative possibilities. This becomes still clearer when we consider that this $40,000 or $45,000 covered the building as well as the lot. If,

when he spoke of taking everything together, he had included or contemplated the "second Broadway" idea, he would naturally have referred to a depreciation of one-quarter to one-third of $66,000; for he had previously testified that the building cost $16,000. This conclusion is in entire harmony with the rest of Mr. Mitchell's testimony. He stated distinctly, in the earlier part of his cross-examination that "a large portion of the depreciation of the present premises is owing to the fact that there is property taken from each lot by this railroad. That, I think, is the reason why the property is worth less. The property that is taken is what may be seen by everybody, and which I have already described,—the structure itself. The presence of the structure alone in any street is something which anybody would be glad to pay to get rid of it, if the owners of the structure had a right to maintain it. * * * If you had a right to maintain this structure in this street in front of 104 South Fifth avenue, I should be very glad to give you a check for $5,000 to take it away from there." And again:—"*Question.* The mere fact of the presence of the road there, aside from all these incidental consequences, would account for their whole depreciation, or would produce this whole depreciation, in your opinion? *Answer.* The structure itself, and the moving of trains upon it. The value of the property at the present time, without the road, would be $40,000 to $45,000." To the same effect is the testimony of the plaintiffs' other witnesses. Mr. Ireland also said that the depreciation depended very much upon the light which was cut off, and that the property does not now rent for as much as before the railroad was put there; not even for as much as it did 12 or 15 years ago. Mr. Cotter further illustrated the depreciation in the rental value by the statement that, "where a building rented for $1,500, since the elevated railroad has been built there we have had to let it for $1,000." This was a practical confirmation of Mr. Mitchell's estimate of the percentage of depreciation, and an additional support for the conclusion that mere expectations speciously drawn from him on cross-examination were not in his mind, and did not color his judgment, when upon the direct examination he gave such percentage of depreciation.

The case was thus brought within the principles enunciated in *Lahr* v. *Railway Co.*, 104 N. Y. 268, 10 N. E. Rep. 528, and *Drucker* v. *Railway Co.*, 106 N. Y. 157, 12 N. E. Rep. 568. Within those principles, the plaintiffs established their damages by competent evidence of depreciation resulting directly from the additional burden put upon the street. Because of their unlawful use of the street,—that is, their use of it without just compensation,— the defendants were trespassers; and the measure of damage in that class of action is a proper guide for the court at special term, where the equity to restrain the running of the road results from the continuing trespass. The plaintiffs did not themselves inject into the case even what FINCH, J., in *Drucker* v. *Railway Co.*, *supra*, terms "a survey of the general facts." They rested upon evidence of depreciation caused by the structure, and by the taking thereby of property from each lot. It served the defendants' purposes to follow this up by going into generalities, and seeking to impress legal evidence with speculative considerations. In this, however, we think they failed; and we are strengthened in this conclusion by the very meager sum awarded to the plaintiffs by the special term. If, however, they had succeeded in thus bringing in an element of partial uncertainty, the judgment would not necessarily, and for that reason alone, be disturbed. Even that contingency is met by the opinion of FINCH, J., in the *Drucker Case*, and the following quotation from that opinion is exceedingly apt: "It is often the case that damages cannot be estimated with precision, and the basis of accurate calculation is wanting and inadequate. * * * Such evidence as can be given should be given, and facts naturally tending to elucidate the extent of loss should not be withheld. But when all the proof which, in the nature of the case, is fairly possible, has been given, the good sense of a jury must

provide the answer, and it is no defense that such judgment involves more or less of estimate and opinion, having very little to guide it.    That criticism has no force in the mouth of the wrong-doer when all reasonable *data* have been furnished for consideration." In the case at bar, the good sense of the court has provided the answer; and it is impossible to believe, in view of the small sum awarded for the easement, that the defendants were prejudiced by any speculative considerations as to the growth and improvement of the street in case the railroad had not been constructed.

Since writing the above my attention has been called to an opinion of the court of appeals in *McGean* v. *Railway Co.*, 22 N. E. Rep. 957. It seems that the defendants in that case asked the appellate court for a new trial upon a point not deemed sufficiently important in the case at bar to be presented as a distinct ground of reversal.    I refer to the question (noticed but incidentally in the appellants' brief ) put to expert witnesses at to the value of the property upon the assumption that the elevated railroad was not now in front of such property.    The court seems to have been of opinion that the question, if properly objected to, was inadmissible, (citing *Teerpenning* v. *Insurance Co.*, 43 N. Y. 279, and *Marcly* v. *Shults*, 29 N. Y. 346,) but the judgment was nevertheless affirmed, substantially upon the ground that the defendants were not prejudiced.    The same reasoning is, *a fortiori*, sufficient to support the present judgment; for this cause was tried as an equity case by the court at special term, while the *McGean Case* was a common-law action tried by a jury.    The learned judge who tried the case at bar was certainly not misled by the testimony thus elicited; and this is especially clear from the manner in which he received it, namely, to quote his language, "as one of the factors in the ascertainment of damages, reserving the question as to its application." But for this opinion of the court above, I should not have doubted the propriety of receiving such evidence.    It is almost a necessity in this class of cases, and frequently better evidence cannot be had; thus, seemingly, bringing it within the exception referred to by ALLEN, J., in *Teerpenning* v. *Insurance Co., supra.*    And I should have supposed that it was also admissible under rules laid down, and upon principles enunciated, in a great number of cases in this and other states.    See, in this state, *Clark* v. *Baird*, 9 N. Y. 196; *People* v. *McCarthy*, 102 N. Y. 639; 8 N. E. Rep. 85; *In re Rochester*, 40 Hun, 588, (citing *Conhocton S. R. Co.* v. *Buffalo, N. Y. & E. R. Co.*, 3 Hun, 523, and *Railroad Co.* v. *Budlong*, 10 How. Pr. 290;) *Reed* v. *Railroad Co.*, 48 Hun, 231; *Beir* v. *Cooke*, 37 Hun, 38.    Indeed, I am informed that the trial justices to whom very many of these cases have fallen at special term have acted upon the understanding that the precise question had been put in *New York Nat. Exch. Bank* v. *Metropolitan El. Ry. Co.*, and that such question had been approved by the affirmance of the judgment in that case.  108 N. Y. 660, 15 N. E. Rep. 445.    It may be, however, that the appellate court deemed a stricter rule to be applicable in a common-law action for damages, such as the *McGean Case*, than in equity suits for an injuction *nisi*, involving final and complete compensation, such as the *New York Nat. Exch. Bank Case*, and such as the present.    At all events, I see nothing in the opinion in the *McGean Case* to require any change in the conclusion already arrived at here.    The judgment appealed from should therefore be affirmed, with costs.    All concur.