WALTER LANGDON, PLAINTIFF, *v.* THE MAYOR, ETC., OF THE CITY OF NEW YORK AND THE BOARD OF THE DEPARTMENT OF DOCKS, DEFENDANTS.

MARION LANGDON AND ANOTHER, PLAINTIFFS, *v.* THE SAME.

*Eminent domain — measure of damages — evidence — admissions of a party.*

In proceedings for the condemnation of property, under the exercise of the power of eminent domain, the plaintiff was awarded for the taking of his bulk-head, on the North river, by the city of New York, a sum based simply on a capitalization of the amount received for wharfage and cranage.

Under chapter 261, Laws of 1858, there had attached to such bulk-heads in said city, what is termed the right of " a preferential use " of said bulk-heads by certain steamship lines, and that right had been declared by the Court of Appeals to be both vested and valuable.

*Held,* that, however problematical or difficult of estimation said preferential right might be, it was an element of value, and as such it was error to exclude evidence tending to show such value.

That, in such proceedings, the owner of the bulk-head was entitled to its market value; that is, what the property could be sold for, there being included in the price the value of all rights connected with the property of any nature whatever.

Reports of the dock department showing what it had paid for similar property on the North river were offered in evidence by the plaintiff and were objected to upon the ground that the deeds of conveyance should be produced, as they might show that in those cases more property was taken than in the present case.

*Held*, that the reports should not have been excluded on the ground stated.

An admission by a party that he has bought property at a certain price is evidence against him, and if he desires to limit the admission by showing the property to be different from what such admission would imply, the burden is upon him to establish the limitation.

MOTION on the part of the defendants to confirm a referee's report, and motions by the plaintiffs to set aside the referee's report and for a new hearing.

The action was brought to enjoin the defendants from building any structure in front of a bulk-head on West street, adjoining the Hudson river, between King and Leroy streets, in the city of New York, at which the plaintiffs had certain wharfage rights, and to recover damages for alleged loss of profits. The dock department of New York, claiming the right to do so without compensating the plaintiffs, had commenced to build a new wharf under plans prepared in accordance with chapter 574 of the Laws of 1871. By this act the dock department of the city of New York was authorized to determine upon a plan of water front for the city, and also to acquire in the name of the city all wharf property to which the city had not title, and any rights, terms, easements and privileges pertaining to any wharf property in said city.

By chapter 261 of the Laws of 1858, it was provided that whenever the owners of any wharves and slips on the East river should lease the same to any of certain lines of steamers mentioned in the act, "the wharves and slips so leased shall during the term of the lease be kept and reserved for the exclusive use and occupancy of the steamboats of the lessees to the extent necessary for the conducting and doing the business in which they are engaged."

*W. H. Peckham* and *W. J. Marrin*, for the plaintiffs.

*Thomas P. Wickes*, for the defendants.

Van Brunt, P. J. :

It has been determined in this action that the plaintiff was entitled to recover from the defendant the value of the property which was taken by the defendant in the construction of its new bulk-head wall in front of plaintiff's bulk-head ; and the reference which has resulted in the report now before us was to take proof and report the same, with the opinion of the referee, as to the value of the property so taken, both at the time of the taking of the property and also at the time of the hearing before the said referee.

The referee, having heard the proofs, reported that, in his opinion, there was no difference in value between the time of the taking of the property and the time of the hearing, and reported in favor of the plaintiff for a very small amount of the sum which was claimed by him ; and the question which comes before this court upon the presentation thereof is what judgment should be rendered upon the facts established.

The claims of the parties were very wide apart, and it seems to us, upon an examination of the evidence, that the investigation has proceeded to a considerable extent upon an erroneous theory. It seems to be considered that as this right to the bulk-head was a right to collect wharfage and cranage, that therefore the measure of compensation to be paid to the plaintiff was to be necessarily limited to a capitalization of the amount which might be received at such bulk-heads for wharfage and cranage, and, in the opinion of the learned referee, very copious references are made to the opinions of the Court of Appeals in these bulk-head cases to sustain this view.

We think, however, that these opinions do not bear this construction, but that the language used is to be interpreted in view of the question which was being discussed by the court and presented at the time. When these cases were before the Court of Appeals the court held that upon the question of damages error had been committed, because it appeared that the experts, who were examined as witnesses for the purpose of determining the value of the property taken, had included (and the referee had done the same) an erroneous element in fixing such value, and all that was decided was that a report, based upon evidence which had taken into consideration an erroneous element of valuation, could not be sustained.

There seems to be no reason.why the plaintiff, because of the peculiar nature of the property, stands in any different relation to the power exercising the right of eminent domain than the owner of any other property, namely, that he is entitled to compensation for the property of which he has been deprived. And the ordinary rule governing such measure of compensation is, that he shall be paid the market-value of the property. Market-value is ordinarily arrived at by conclusions deduced from transactions in property of a like character. Persons familiar with the property, and with dealings in property of a like character, are called upon to testify as to their opinion of its value, such opinion being based upon knowledge acquired by other transactions. Market-value is a plain definite term. A market signifies not only that there shall be sellers, but also that there shall be buyers, because there can be no market where everybody wants to sell and nobody wants to buy, or where everybody wants to buy and nobody wants to sell.

Therefore, in the case at bar the question to determine was, what in the market could the plaintiff have obtained for these rights which he had? The fact that they produced a certain amount of income may have been some evidence of value. But it was by no means conclusive, nor was it the best evidence. A man might own a lot on Fifth avenue and be able to derive very little rent from it, and yet, for the purposes of sale it would be of great value. So it is established by the evidence in the case at bar that the mere right of collecting wharfage and cranage was but a small incident in what was the market-value of the ownership of such right. And it was shown and proven in this case, that to a certain class of the trade which came to the port of New York these bulk-heads were almost a necessity, and that this had been so early recognized that, in 1858, the legislature had passed an act, whereby the exclusive use of piers and bulk-heads or wharves and slips might be given to certain classes of commerce, to the extent necessary for the conducting and doing the business in which they were engaged.

It appeared that the large steamship companies, which were located in and about this property, were desirous of acquiring these bulk-heads in order that their access to their slips might not be interfered with. And it is to be observed that this exclusive use, which is authorized by the act of 1858, does not refer only to the time of the

actual occupancy of the wharf and slip by the vessel itself, but such exclusive use may be kept and reserved, to the extent necessary for the conducting and doing the business in which the companies were engaged. If it is necessary to keep the slip vacant for an incoming boat, although not actually there, in order that the business in which they are engaged shall be properly conducted, clearly such right can be reserved under that act, and the result of the ownership of this bulk-head right by these large steamship companies was, substantially, to prevent their being interfered with in the occupation of the slip by any other crafts entering for the purpose of getting to the bulk-head, which exclusive use was an absolute necessity for the proper conduct of the business in which these companies were engaged. This gave a substantial value to those bulk-heads far in excess of the right of collecting wharfage and cranage.

The learned referee states that, if the estimate of value presented on the part of the plaintiffs is adopted, he does not think a reasonable measure of compensation for the destroyed wharfage rights of the plaintiffs, as they have been limited by the courts, and the value of the incident of preferential use which, under the suggestion of the Court of Appeals, may be attached thereto, could be honestly ascertained and fairly measured; and he further states: " I do not understand that what is stated in the *Kingsland Case*, concerning this incident of preferential use, necessarily requires that I should determine that it is so related to the wharfage rights of the plaintiffs in these cases, as to justify a compensation therefor, tremendously in excess of the value of their simple and uncomplicated wharfage rights."

But the evidence in this case showed beyond question, that the market value of these bulk-heads was far in excess of the simple wharfage rights; and if that arose from these preferential rights, however problematical they might be, the city had no power to deprive the plaintiff of his property without paying that which this property was reasonably worth — that for which it could have been sold, whether such value arose from preferential rights or the right to collect wharfage. Due compensation means paying the full value, and value is determined by what a thing can be sold for.

In view of the condition of the evidence in this case, at the time it was submitted to the learned referee, we concede that it was

impossible to make a just and fair estimate of the value of these rights. The evidence upon the part of the plaintiff undoubtedly gave a greatly exaggerated estimate of the value of these privileges; and the estimate on the part of the defendant was, on the other hand, ridiculously small. The plaintiff does not seem to have been entitled to receive an award as large as is claimed by him; neither was the city to be allowed to appropriate this property for the mere bagatelle of the capitalization of the wharfage rights.

There was evidence offered, however, which was stricken out by the learned referee, which might have afforded a fair ground upon which an estimate of value might have been founded.

The plaintiff offered in evidence the reports of the dock department showing that they had bought what, in some instances, was described as bulk-head property and wharf rights, and in others bulk-head and wharf property, at various places upon the North river. This evidence was objected to solely upon the ground that the deeds should be produced, as they might show that the property referred to in the report comprised more than that which had been taken from the plaintiff. This objection was sustained and the offer of evidence was refused. This, we think, was error. If the plaintiffs had a right to show these facts upon the question of the value of these rights, then this evidence was competent; and if it was to be limited, it was the defendants who were called upon to limit the same. The nature of the evidence is not objected to; but the only objection is that the deeds should be produced. Now, if a party makes an admission that he has bought certain property at a certain price, that admission is evidence; and if he wants to limit the admission, by showing that the property is different from that which the admission would imply, he has to offer evidence to show the limitation.

Thus it would appear that evidence which was very important in determining the value of these rights was excluded from consideration by the referee; and such evidence not having been admitted or considered, and not being in the record as far as this court is concerned, it cannot be considered by us; because, if the evidence is to be considered, the defendants should have the opportunity to show that, notwithstanding those admissions, the property purchased was differently situated and of a different character from that taken

from the plaintiff, and that, consequently, the evidence could have no-bearing upon the question under investigation.

The value of this evidence is peculiarly great in a case like the one at bar, where it appears that it is difficult to fix a market-value dependent upon actual transactions, these rights not being the subject of frequent barter and sale, so as to enable parties familiar with the market to speak from actual transactions, but their opinions being of necessity largely dependent upon ideas to some extent speculative.

We think, therefore, that there having been an exclusion of evidence which was competent, and the investigation in respect to the value of this property having proceeded upon an erroneous theory, this report should be sent back in order that the parties may introduce additional evidence upon which a judgment may be rendered.

BARRETT and BARTLETT, JJ., concurred.

Report sent back in order that the parties may introduce additional evidence upon which a judgment may be rendered.