WILLIAM M. KINGSLAND, AS SOLE SURVIVING TRUSTEE UNDER THE WILL OF DANIEL C. KINGSLAND, RESPONDENT, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, AND OTHERS, APPELLANTS.

*Evidence of value — the consideration named in a deed is not — nor is a lease of adjacent premises — the reason for an expert's opinion.*

In an action brought to recover the value of a bulk-head which had been taken by the city of New York, a witness, familiar with the locality, but whose knowledge of the circumstances attending the sales of bulk- head property therein was derived entirely from an abstract of title, was allowed to state the prices paid by the city for two other bulk-heads similarly situated. ·

*Held,* that this was not a proper method of proving value.

That the consideration named in a deed is not competent evidence upon the question of the value of the premises described in it.

*People ex rel. Mayor* v. *McCarthy* (102 N. Y., 630), followed; *Langdon* v. *Mayor* (59 Hun, 434), distinguished.

A lease of a pier, adjacent to the bulk-head in question, but of a much more valu- ·able character, was admitted in evidence to show the rental paid for said pier.

*Held,* that this evidence was improper, not simply because the pier was not similar to the one taken by the city, but also because the proper method of proof was by the testimony of competent persons given under oath.

A party has no right to cross-examine his own expert witness, with a view of placing before the jury the mental process by which the witness arrives at a given result; that privilege is reserved to his opponent in case he desires to avail himself of it.

APPEAL by the Mayor, Aldermen and Commonalty of the City of New York, the Department of Docks of the City of New York and

Joseph Koch, Lucius J. M. Stark and James Matthews, comprising the Board of the Department of Docks of the City of New York, from a judgment entered in the office of the clerk of the county of New York on the 24th day of June, 1890, in favor of the plaintiff for $146,190.56, after a trial at the New York Circuit before the court and a jury, at which a verdict was rendered in favor of the plaintiff for $143,460.

*C. Blandy,* for the appellants.

*W. W. MacFarland,* for the respondent.

VAN BRUNT, P. J. :

The trial of this action was an assessment of the damages which the plaintiff had sustained by the appropriation by the defendants of certain bulk-head property or rights belonging to the plaintiff.

The jury found that the fair market-value of the plaintiff's bulk-head, the subject-matter of this action, on the 1st of August, 1880, the time of the appropriation of said bulk-head by the city, was the sum of $90,000, and we are asked to set aside this verdict upon the ground, among others, that it is excessive.

One of the points of controversy during the progress of the trial was, as to the extent of the privileges which were conferred by the ownership of this bulk-head, whether under the act of 1858 its preferential use was limited to steamboat lines, or whether such preferential use included transatlantic and coastwise steamship companies.

It is undoubtedly true that when this case was before the Court of Appeals upon a prior occasion that court seems to have held that under the act of 1858 such preferential use was not limited to steamboat lines, lessees of adjacent piers plying in the waters of the bay, Hudson river, East river, Long Island sound, the rivers emptying into the sound, Narragansett bay and the bays adjacent thereto, which are mentioned in the act, but that transatlantic and coastwise steamship lines were entitled to undisturbed facilities for the transaction of their business under the provisions of this act of 1858.

It is also true that in the course of the opinion of the learned judge who wrote in that case the words " steamboats," " steamers "

" and steamships " are indiscriminately used, and that his opinion winds up with the statement that the plaintiff, as owner of this wharf right, was entitled to the wharfage which it yielded, and such added value as its privilege of preferential use when leased to the adjoining *steamboat* line would give it, but beyond that he had no other right as incident to his ownership. But the fact of the value of this bulk-head to steamship lines was before the court and was discussed by the court, and it seems to have been the opinion of the court that it was properly considered in determining the value of the rights of which the plaintiff had been deprived.

But from the record in this case it is impossible for us to determine as to whether or not the jury took into consideration, in determining the value of the property taken, the preferential or exclusive use by transatlantic or coastwise steamship companies, because we find that they were charged that the act of 1858 gave no preferential use to transatlantic or coastwise steamship companies, and the court refused to charge that the plaintiff was not entitled to compensation for any preferential use or exclusive use of said bulk-head by any transatlantic or coastwise steamship companies.

The question as to whether it was the intention of the Court of Appeals to construe the act of 1858, as giving to an adjoining transatlantic or coastwise steamship line with the owners of this bulk-head a preferential use of the same, can only be authoritatively determined by that court.

There are questions, however, raised by the admission of testimony, which seem to have worked injustice to the appellants. Upon the examination of two of the witnesses called upon the part of the appellants as experts, it was established that there had been private purchases by the city of bulk-head rights from certain persons named in their testimony, and in respect to one of the witnesses it was shown that all his information was derived from the records. Subsequently one George S. Green, the engineer in chief of the department of docks, was called as a witness by the defendants to show the condition of the bulk-head in reference to two of the purchases which were alleged to have been made by the city, and he testified in respect thereto ; and the consideration mentioned in the deeds to the city appeared in connection with his direct-examination. Upon his cross-examination the witness was asked the length of one of

these bulk-heads and then what was the price paid for it. Upon redirect-examination the witness stated that he did not know the circumstances leading to the giving of that special sum of money; he did not recollect that. And when asked upon recross-examination whether the seller had a wharfage right and nothing else, he said he did not know. It is true that he stated that he did not know that the seller had anything else but a wharfage right; but it is evident that the witness was swearing to his conclusion without having any knowledge of the fact.

A motion was made to strike out the evidence of this witness as to the two purchases mentioned, upon the ground, amongst other things, that it was immaterial, and that there was no evidence before the court of the sum the city paid for those pieces of property; and this motion was denied.

We think this was error. It is evident, from the examination of the witness, that he did not know what had been conveyed or whether any other rights were included in the deed or not. And it is further apparent that he did not know what the price paid had been. It seems to be established by the case of *The People ex rel. Mayor* v. *McCarthy* (102 N. Y., 630), that the sums inserted in deeds are no evidence of the actual consideration, and are not, in any view, competent evidence of value. The court say : " No rule of law requires the true consideration paid upon a transfer of land to be inserted in conveyances of real estate, and it is within the knowledge of all conveyancers that the amount stated therein is often determined by fanciful, capricious and arbitrary considerations, which render it utterly unreliable as evidence of value. It is frequently depressed by forced and unnatural sales, and as often enhanced by fictitious values, placed upon property transferred in exchange or deeded in settlement of disputed claims, or given from consideration of affection, liberality and duty, and is at the best but the opinions of the grantors and grantees of its value, or a declaration of the value placed by them upon the property. Such prices have usually been held inadmissible as evidence of value in actions relating to property, for the reason that they are liable to be influenced by too many causes, aside from the actual value, to be regarded as competent evidence of that fact."

" The usual method, however, of proving value in legal proceed-

ings is by the testimony of the witnesses expressing their opinions,. under oath, as to such value, based upon their knowledge of the subject-matter, and familiarity with the circumstances bearing upon the question."

It may be said that this view is in conflict with that expressed by this court in the case of *Langdon* v. *The Mayor* (59 Hun, 434), in which it was held that the reports of the dock department, in reference to purchases by the city, may be considered in determining the market-value of bulk-head rights similar to those at bar. But the proof in that case was in an entirely different condition from that which existed in the case at bar. The evidence offered was from the records of the city itself, showing not one or two, but a large number of purchases, at substantially uniform rates, this being proof which should have been considered upon the question of the market-value of the bulk-head involved in that action.

In the case at bar the witness was allowed to testify to the consideration, without knowing anything about it, that it had ever been paid, and without knowing actually what had been conveyed.

We think, when these facts appeared, the motion to strike out this testimony should have been granted, and it was error to allow it to be considered by the jury.

The plaintiff to maintain the issues upon his part offered in evidence a lease of a pier at the foot of Charlton street, adjacent to the property in question, showing the rental paid for such pier. The introduction of this evidence was objected to and it was clearly improper, not only because the proper method of proving value in legal proceedings is by the testimony of witnesses expressing their opinion under oath, based upon their knowledge of the subject-matter and familiar with the circumstances bearing upon the question (*People ex rel. Mayor* v. *McCarthy, supra*), therefore, proof of individual transactions is not evidence in chief upon the question of market-value, but also because the pier property was of so essentially different character from the property under consideration that it afforded no criterion of value. Undoubtedly, upon cross-examination of a witness put upon the stand to testify as to market-value, questions may be put to him calling his attention to individual transactions for the purpose of testing the value of his opinion.

The objection taken to the question put to the witness Marshall,

when asked to explain in detail the reason why anybody should pay for such a bulk-head more than he could get out of it by collecting wharfage at statutory rates, should have been sustained. The plaintiff in attempting to prove the market-value has no right to cross-examine his own witness. He may ask him for his opinion as to its value after having proved his capacity to testify as an expert; but he cannot call upon such expert for the grounds of his opinion or the mental process by which he arrives at that result. That is a privilege which is reserved to the other side upon cross-examination, if they desire to avail themselves of it.

In the case at bar, by means of this question, the witness was allowed to inject into the evidence an argument upon the question of value, and the expression of opinion upon hypothetical subjects, and from which it appears that considerations entered into his mind in reference to the use to which this pier could be put which were precisely contrary to the decision of the Court of Appeals in this identical case. He says: "If there is no shed on the bulk-head a float or pontoon can be constructed and placed there for the storage of that property — the storage that is in bond and the reception of it out of bond; it can be towed immediately alongside the vessel and discharged over the side of the vessel."

As we understand the decision of the Court of Appeals in this case, this bulk-head cannot be used for any such purpose. It does not make any difference whether the shed is floating or permanent. The right to use it for the purpose of storage does not exist. And this witness was allowed to inject into the case the very elements in the consideration of damages which the Court of Appeals said was not an element which might be considered.

There are other exceptions which might call for consideration, but we think that those to which attention has been called are of such a character as seriously affected the rights of the defendants, and call for a new trial.

The judgment should be reversed and a new trial ordered, with costs to appellants to abide the event.

Daniels and Lambert, JJ., concurred.

Judgment reversed and new trial ordered, with costs to the appellants to abide event.